IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MIDDLE TENNESSEE LUMBER )
COMPANY, INC., and WILLIAM D. )
JOYCE, JR. )
)
v. ) NO. 3:12-0343
)
DOOR COMPONENTS, LLC, KITH )
KITCHENS, LLC., and BO KNIGHT )

**M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil

Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and

all proceedings in the action, including the entry of a final judgment. See Order entered June 14,

2012 (Docket Entry No. 12). The action is currently set for a bench trial on August 27, 2013. See

Order entered June 18, 2012 (Docket Entry No. 13).

Pending before the Court is the Motion for Summary Judgment (Docket Entry No. 17) filed

by Defendants Door Components, LLC, Kith Kitchens, LLC, and Bo Knight, to which the Plaintiffs

have filed a response (Docket Entry No. 35) in opposition. Also before the Court is the Defendants'

reply (Docket Entry No. 57). For the reasons set out herein, the Defendants' motion is DENIED.

## I. BACKGROUND

The Plaintiffs in this action are Middle Tennessee Lumber Company, Inc. ("MTL") and

William D. Joyce, Jr. ("Joyce"). MTL is a Tennessee corporation engaged in the business of

manufacturing wood products such as flooring, millwork, and finished boards from raw lumber. Joyce is a Tennessee resident and is the president and 100% owner of MTL.

Prior to January 2011, Joyce was a partner in MTL with Mike Lewis ("Lewis"), each man owning an equal 50% share in the business. On January 7, 2011, Lewis and Joyce entered into a Stock Redemption, Stock Purchase, and Real Estate Purchase Agreement ("Purchase Agreement"), whereby Joyce and MTL purchased Lewis' interest in MTL for the sum of five million dollars ($5,000,000). As part of the transaction, Lewis entered into a Non-Solicitation Agreement in which he agreed, for a period of three years, to not solicit, attempt to solicit, or otherwise engage in business with a list of current customers of MTL, to not interfere, directly or indirectly, in MTL's business, and to not voluntarily act in any manner that would reasonably be expected to be detrimental to MTL's business.

Door Components, LLC ("Door Components") is a business located in Alabama that sells cabinets and other wood products. Bo Knight ("Knight") is the president and part owner of Door Components. Door Components was a customer of MTL for several years and was listed as a customer in the Non-Solicitation Agreement. Kith Kitchens and Kith Furniture are two businesses formed by Door Components in March 2011, to take over Door Components' kitchen cabinetry business and Door Components' newly established furniture manufacturing business, respectively.

On March 2, 2012, the Plaintiffs filed this action in the Chancery Court for Davidson County, Tennessee against Door Components, Kith Kitchens, and Knight seeking over $800,000 in compensatory damages, as well as treble damages or punitive damages. See Docket Entry No. 1-1. On April 4, 2012, the Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332.

The Plaintiff allege that, shortly after Lewis sold his interest in MTL, he and Knight entered into discussions during the Spring of 2011 about Lewis' supplying wood products to Door Components or Kith Kitchens. The Plaintiffs assert that Lewis established a lumber and milling facility called Lewis Lumber and Milling, Inc. ("Lewis Lumber") in May 2011, and that in July or August 2011, Door Components and/or Kith Kitchens began to purchase its wood products from Lewis' new company. At approximately the same time, the Plaintiffs allege that Door Components ceased its long standing business relationship with MTL and MTL lost its largest and most profitable customer. The Plaintiffs assert that the Defendants acted wrongfully by entering into purchase agreements with Lewis despite their knowledge of the Non-Solicitation Agreement and the restriction it imposed upon Lewis' doing business with them. Contending that the Defendants' actions were intentional and malicious, the Plaintiffs bring a statutory claim against the Defendants for inducement to breach a contract in violation of Tenn. Code Ann. § 47-50-109 and a common law claim for tortious interference with contract.[1]

In the motion for summary judgment, the Defendants argue that they are entitled to summary judgment as a matter of law because the Plaintiffs cannot prove that the Defendants acted with the requisite malice required for the claims. The Defendants assert that their actions were intended to protect their business and economic interests and not to harm the Plaintiffs, and thus were justified

---

[1] To seek relief from Lewis' violations of the Non-Solicitation Agreement and from any future violations, the Plaintiffs initiated an arbitration proceeding against Lewis and obtained an consent injunction on August 23, 2011, requiring Lewis to cease any further business operations with Door Components or Kith Kitchens. On June 15, 2012, the arbitrator awarded MTL and Joyce damages in the amount of $529,000 for Lewis' violation of the Non-Solicitation Agreement by engaging in business with Door Components and Kith Kitchens and damages in the amount of $45,000 for Lewis' violation of the Non-Solicitation Agreement by having assisted in the recruitment and hiring of a MTL employee, as well as attorney fees and expenses. See Docket Entry No. 54-1.

and lacked malice. Specifically, they argue that they were not satisfied with the quality, delivery, or price of the product supplied by MTL during early 2011, nor with its business relationship with MTL after Lewis departed, and they were justified in seeking another supplier. The Defendants also contend that their actions did not proximately cause Lewis to breach the Non-Solicitation Agreement.

Alternatively, the Defendants argue that, even if the issue of liability on the Plaintiffs' claims is reserved for trial, the Court should rule as a matter of law that any damages should be cut off as of August 26, 2011, which is the date that Lewis consented to the injunction and the date that the Defendants ceased to do business with Lewis. As such, the Defendants contend that their damages would be limited to $51,866.86, which is the amount of the orders filled by Lewis. They argue that they had an open ordering policy with MTL and were not bound by any contract or agreement to purchase product from MTL. They also argue that any damages suffered by the Plaintiffs after August 26, 2011, were caused by MTL's own actions of materially changing the terms of the business relationship that had previously existed between MTL and Door Components/Kith Kitchens by requiring Door Component/Kith Kitchens to agree to new ordering terms in late August 2011, that required Door Components/Kith Kitchens to commit to a year long contract with minimum purchase amounts, and that provided penalties for not meeting these minimum requirements. Finally, the Defendants argue that punitive damages are not appropriate as a matter of law based upon the facts of this case.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

### III. ANALYSIS

Tennessee law provides for both a common law action and a statutory action for tortious inducement to breach a contract. Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 120 (6th Cir. 1977); Polk & Sullivan, Inc. v. United Cities Gas Co., 783 S.W.2d 538, 542 (Tenn. 1989). Tenn. Code. Ann. § 47–50–109 (1995) provides that:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code. Ann. § 47-50-109. The statute is merely a codification of the common law cause of

action, except as to the damages that may be recovered against a wrongdoer. See Edwards , 563 F.2d

at 119-20; Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 158 (Tenn.Ct.App. 1997). Under the

statute, treble damages are mandated but are the only remedy available. The common law remedy,

however, permits an award of punitive damages in addition to any compensatory damages. See

Givens v. Mullikin, 75 S.W.3d 383, 405 (Tenn. 2002). Regardless of the differences in the damages

permitted, both causes of action exist to deter third parties from interfering with the contractual

relations of parties to a contract and provide a remedy in addition to the right to recover directly upon

the breach of the underlying contract. See Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d

785, 789 (Tenn. 2006).

The elements of a cause of action for procurement of the breach of a contract under both the

common law and Section 47-50-109 are the same: 1) there must be a legal contract; 2) the wrongdoer

must have knowledge of the existence of the contract; 3) there must be an intention to induce its

breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract;

6) the act complained of must have proximately caused the breach of the contract; and 7) there must

have been damages resulting from the breach of the contract. Givens v. Mullikin, 75 S.W.3d 383,

405 (Tenn. 2002); Myers, 959 S.W.2d at 158;   See also Carruthers Ready–Mix, Inc. v. Cement

Masons Local Union No. 520, 779 F.2d 320, 323 (6th Cir. 1985). Although the elements of the

causes of action are the same, the imposition of mandatory treble damages under the statutory cause

of action requires a showing of the elements by clear and convincing evidence for that claim, as

opposed to the preponderance of the evidence standard that applies to the common law cause of

action.  See Buddy Lee Attractions  v. William Morris Agency, 13 S.W.3d 343, 353-360 (Tenn.Ct.App. 1999).[2]

The Court is not persuaded by the Defendants' arguments that they are entitled to summary judgment because there is a lack of evidence on the elements of malice and proximate cause.[3]  In the context of the plaintiff's claims, malice means "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 219 (Tenn.Ct.App. 2004). If a defendant intends to gain business from a breaching third party, and if the breach necessarily inflicts injury upon the plaintiff, that is enough from which an evil intent can be inferred. Id. See also AmeriGas Propane v. Crook, 844 F.Supp. 379, 389 (M.D.Tenn. 1993) ( "[M]alice does not require ill will or spite toward Plaintiff.  Malice is demonstrated simply by conduct that is 'the willful violation of a known right.'").  Proximate causation requires that the alleged conduct of the defendants be a substantial factor in causing the injury complained about, that there is no statute or policy that relieves the defendant from liability, and that the harm caused was reasonably foreseeable by a person of ordinary intelligence and prudence.  See  Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758, 221 (Tenn. 2006).

Review of the evidence before the Court shows the following, non-exhaustive list of essential facts:  1) Knight had discussions with Lewis in the Spring of 2011 about Lewis' providing product

---

[2] A plaintiff who is successful in proving liability under both causes of action and who is also successful in obtaining a punitive damage award must elect between the treble damage award and the punitive damage award after such awards are made.  See Buddy Lee Attractions, 13 S.W.3d at 3557.

[3] For the purposes of their motion for summary judgment, the Defendants primarily raise arguments as to the elements of malice and causation.  See Docket Entry No. 30, at 23 n.5.

to Door Components/Kith Kitchens; 2) Knight was made aware of the Non-Solicitation Agreement; 3) Knight had a conversation with Lewis' attorney and provided information regarding the structure of Door Components and Kith Kitchens; 4) Knight and Lewis eventually agreed that Lewis would supply product to Kith Kitchens and they both took steps toward that goal; and 5) Kith Kitchens placed orders with Lewis for product and those orders were filled by Lewis. Although the Defendants offer an interpretation of this evidence and offer additional evidence of their dissatisfaction with MTL during 2001 and of the business factors that played into their decision to enter into product orders with Lewis and to cease doing business with MTL, the evidence before the Court is not so one sided that it can only be viewed as favoring the Defendants. Indeed, reasonable minds could differ on their interpretation of the evidence before the Court. Furthermore, the Defendants have not presented to the Court any rule of law that would require, based on the facts of this case, a ruling in their favor as a matter of law on their asserted arguments of justification and privilege. See Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 121-22 (6th Cir. 1977). In short, the Defendants have not shown the absence of a genuine issue of material fact, and the determination of whether the elements of malice and proximate cause can be proven by the level of proof required for the Plaintiff's claims is simply a determination that can only be made after the proof in this case is heard at trial.

The Court also does not agree with the Defendants' arguments that, as a matter of law and prior to trial, the Court should cap or limit the amount of damages that can be awarded in this action.[4] If the Plaintiffs are successful in proving the Defendants' liability for wrongfully inducing

---

[4]Indeed, given the possibility of trebled damages under the Plaintiffs' statutory cause of action, capping the amount of damages at $51,866.86, the amount of actual orders the Defendants placed with Lewis, as requested by the Defendants, is not appropriate.

the breach of contract by Lewis, the Plaintiffs are entitled to the damages that result from the breach of contract. These damages may include consequential losses. See TSC Indus. v. Tomlin, 743 S.W.2d 169, 172 (Tenn.Ct.App. 1987). It will be up to the Plaintiffs to prove at trial the extent of their damages with reasonable certainty. See Waggoner Motors, Inc. v. Waverly Church of Christ, 159 S.W.3d 42 (Tenn.Ct.App. 2004). The Defendants will have the opportunity at trial to contest the Plaintiffs' proof on the issue of damages.

With respect to the issue of punitive damages, the Court finds that genuine issues of material fact exist on the issue of the culpability of the Defendants' conduct. The full scope of the evidence must be heard to determine whether the Plaintiffs have shown, by clear and convincing evidence, that the Defendants' conduct was sufficiently intentional, malicious, reckless, or fraudulent to support an award of punitive damages. See Hodges v. S.C. Toof, 833 S.W.2d 896 (Tenn. 1992). The Court finds that there is sufficient evidence in the record, when viewed in the light most favorable to the Plaintiffs as the non-moving party, to require the claim for punitive damages to be heard at trial.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is DENIED and this action shall proceed to trial on all issues.

An appropriate Order will enter.

JULIET GRIFFIN
United States Magistrate Judge